UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRISTY FLYNN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 2:13-cv-07759 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Kristy Flynn brings this action pursuant to 42 U.S.C. §§ 405(g) seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and Disability Benefits. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

### I.  LEGAL STANDARDS

#### A. The Five-Step Sequential Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step

1

four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity (or "RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## II. BACKGROUND

Plaintiff seeks a finding of disability on the basis of psychological impairments. Administrative Transcript ("Tr.") 28. Plaintiff is thirty-two years old and lives in Bayonne, New Jersey with her two-year-old child. Tr. 16. Plaintiff claims that she is unable to work because she has anxiety and doesn't like to be around other people. Tr. 37. Plaintiff has a high school diploma. Tr. 18. Previously, Plaintiff has held jobs as a waitress, a bartender, and an in-home child care worker. Tr. 354, 18.

On November 1, 2009, Plaintiff filed a Title XVI application for supplemental security income. On November 25, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance, alleging disability as of September 8, 1999. The application alleged that Plaintiff suffered from medical impairments, including depression, bipolar disorder, ADHD, and an anxiety disorder. Tr. 28. The ALJ denied Plaintiff's claim on June 13, 2012, and the Appeals Council affirmed that decision on October 18, 2013. The ALJ's decision denying Plaintiff's

application was based on the finding that Plaintiff's residual functional capacity ("RFC") is compatible with other work existing in the national economy. Tr. 8-24. Specifically, the ALJ relied on the Vocational Expert's ("VE") testimony, finding that Plaintiff can perform unskilled repetitive jobs that require only occasional contact with the public. Tr. 24. Plaintiff now appeals.

### A. Summary of the Record

The record includes medical records from treating physician Dr. Mariza Del Rosario Garcia, psychological evaluations from Dr. Jennifer C. Figurelli, Ph.D., and an evaluation from non-examining consultant, Dr. Paul Fulford, Ph.D. It also includes Plaintiff's own testimony regarding her condition and her daily routine. Finally, it includes testimony from the VE, Mr. Rocco Meola.

Dr. Figurelli conducted Plaintiff's psychological evaluation on August 4, 2011. Tr. 251. As a result of Dr. Figurelli's Mental Status Examination, Plaintiff was found to suffer mild mental retardation with an IQ of 61. Tr. 337. In addition to this Axis I diagnosis, Dr. Figurelli also diagnosed Plaintiff on Axis II with "depression, general anxiety disorder, ADHD, bipolar I (mixed) and r/o heroin dependence." Tr. 368. Upon further review of Dr. Figurelli's evaluation, the ALJ submitted interrogatories to medical expert and clinical psychologist, Dr. Paul Fulford. Tr. 251. Those interrogatories were completed on May 3, 2012. Tr. 251. Dr. Fulford concluded that Plaintiff meets the listing for mental retardation with a full scale IQ of 61, placing her in the mild range of mental retardation. Tr. 370.

In contrast to Dr. Figurelli and Dr. Fulford's findings, the record also includes medical records and evaluations from Plaintiff's treating physician, Dr. Del Rosario Garcia. These evaluations, which took place between 2009 and 2011, do not mention any cognitive limitations. Tr. 352. In 2009, Dr. Del Rosario Garcia noted in her treatment assessment that Plaintiff's speech was normal, her thoughts were organized, and she was fully oriented. Tr. 352. In January 2010, Dr. Del Rosario Garcia diagnosed Plaintiff with an anxiety disorder, but Plaintiff's mental status remained unchanged. Tr. 351. Similarly, in October 2011, Dr. Del Rosario Garcia noted in her treatment assessment that Plaintiff's mental status remained in tact. Tr. 345. Again, Dr. Del Rosario Garcia's treatment notes explained that Plaintiff's speech was normal, her thoughts were organized and of normal fluency, she was fully oriented, and her memory was in tact. Tr. 345.

The record contains Plaintiff's own testimony regarding her condition and her daily routine. Plaintiff wakes up between 8:00 a.m. and 8:30 a.m. Tr. 16. She cooks breakfast and takes her medication. Tr. 16. In the afternoons, she takes her son to the

park. Tr. 16. In the evenings, she cooks dinner. Tr. 16. She shops and does laundry. Tr. 16. In addition to caring for herself and her child, she worked as a self-employed childcare worker where she cared for a friend's child. Tr. 16. She earned $9,605 in 2009 and $10,967 in 2012. Tr. 16. When asked why she could not work, Plaintiff explained that she has difficulty being around others and does not like taking the bus. Tr. 37.

The record also contains the testimony of VE, Mr. Rocco Meola. Mr. Meola testified that a person with Plaintiff's limitation could perform jobs of unskilled work at all exertional levels. Tr. 19. Specifically, Mr. Meola testified that a person with Plaintiff's limitation could perform the following jobs: document prep worker, table worker, weigher, and microfilm mounter. Tr. 19. He further testified that these jobs are available in an amount of approximately 12,000 (in the aggregate) in the regional economy and in an amount of approximately 40,000 (in the aggregate) in the national economy. Tr. 19.

### B. The ALJ's Decision

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 8, 1999, the alleged onset date of her disability. At step two, the ALJ found that Plaintiff has the following severe impairments: affective disorder, learning disorder, and a history of drug abuse.

At step three, the ALJ must determine whether the claimant's impairment meets or is equivalent to one of the listed impairments. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Here, the ALJ concluded that the Plaintiff's impairments do not meet or medically equal one of the impairments found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. In order to pass step three, Plaintiff would have had to demonstrate at least two of the following: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each for an extended duration." Tr. 14. A marked limitation means more than moderate but less than extreme. Tr. 14. Repeated episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. Tr. 14. The ALJ found that the Plaintiff has only mild restrictions or moderate restrictions in each of these spheres and no episodes of decompensation. Tr. 14.

At step four, the ALJ determined that Plaintiff does not have any past relevant work, and thus the analysis proceeded to the fifth and final step. Tr. 14. At step five, the ALJ determined that Plaintiff is able to find work in the national economy considering her residual functional capacity, age, education and work experience. Tr. 24. As to the mental demands of work, the ALJ concluded that claimant is able to perform jobs:

> That are unskilled and repetitive; that permit at least three breaks during the workday—each of at least 15 minutes duration; that are low stress (that is, these jobs require only an occasional change in the work setting during the workday, only an occasional change in decision making required during the workday, and, if production based, production is monitored at the end of the day rather than consistently throughout it); that require no work in close proximity (closer than 3-5 feet) to others to avoid distraction; and that require only occasional contract with supervisors, and co-workers, but no contract with the general public. Tr. 15.

The ALJ based this finding in part on the testimony of the VE, Dr. Meola. Dr. Meola concluded that Plaintiff has the ability to work at all exertional levels, but with several non-exertional limitations, and that work exists in the national economy for a claimant matching Plaintiff's age, education, and residual functional capacity. Tr. 57.

### III. DISCUSSION

Plaintiff challenges the ALJ's determination that she was not disabled as of December 8, 1999. Specifically, Plaintiff argues that the ALJ committed the following errors: (1) the ALJ incorrectly determined that Plaintiff's impairment is not equivalent to one of the listed impairments by failing to consider medical evidence regarding Plaintiff's IQ; and (2) the ALJ incorrectly determined that Plaintiff's residual functional capacity was compatible with other work existing in the national economy. Each of these challenges will be addressed in turn.

#### A. Step Three: Whether the ALJ correctly rejected Plaintiff's IQ score

Plaintiff contends that the ALJ erred in rejecting the Plaintiff's IQ score. Specifically, Plaintiff contends that there is no contradictory medical evidence which would place Plaintiff's IQ in question, and thus, the ALJ was constrained at step three to find the Plaintiff disabled as a result of Dr. Figurelli's finding of mild mental retardation. The Court disagrees.

According to the Plaintiff, her IQ was so low that she should be found disabled under listing 12.05(C) for intellectual disability. In order to meet Listing 12.05, a claimant must meet both the introductory criteria to that listing as well as the criteria of one of paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A; *Gist v. Barnhart*, 67 Fed. Appx. 78, 81 (3d Cir 2003). At this step, the ALJ determined that Plaintiff's impairments fail to meet the standards of intellectual disability because the evidence fails to show that the criteria for one of paragraphs A through D were met. Tr. 15. Specifically, the ALJ determined that the Plaintiff has only mild restrictions or moderate restrictions in each of the subsections and no episodes of decompensation. Tr. 14.

The ALJ reached this conclusion largely based on Plaintiff's level of functioning in her daily routine. The ALJ determined that Plaintiff's level of functioning is inconsistent with her alleged cognitive limitations. Plaintiff was a high school graduate. Tr. 16. She held employment as a waitress and bartender and takes care of her two-year-old son. Tr. 16. Dr. Del Rosario Garcia's assessment explains that her speech was normal in rate and tone, her thoughts were organized, and she had no delusions. Tr. 18. In fact, Dr. Del Rosario Garcia estimated that Plaintiff had average intelligence. Tr. 355. Although Plaintiff's mental state may have limited her routine, nothing in the record suggests that she was cognitively unable to perform normal work activities. *See Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004) (explaining that the ALJ is entitled to rely not only on what the record says, but also on what it does not say).

It is well established in this Circuit that the ALJ is "not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record." *Markle v. Barnhard* 324 F. 3d 182, 186 (3d Cir. 2003). Here, the ALJ outlined her reasons for rejecting both the IQ score and Dr. Fulford's medical opinion:

> I find these assessments inconsistent with the evidence as well as with the claimant's work history and current daily activities; I afford them little weight. The medical record indicated that the claimant had behavioral problems in school and was diagnosed with ADHD in 1997 at age 15 . . . . It is clear that claimant's problems in school stemmed from behavioral issues. She herself remarked that she did not understand why she was placed in special education; she states that she wanted more difficult school work. She was able to graduate and was able to obtain a driver's license. She also testified at the hearing that she worked for two years as a self-employed child care worker. In her Function Report, which is written in a clear, concise manner, using several three and four syllable words and complete sentences (albeit

6

without punctuation), she wrote that she cooked, shopped, and cleaned . . . . I assume that Dr. Fulford accepted the IQ obtained by Dr. Figurelli as valid despite the fact he made no reference to the claimant's activities of daily living, or the fact that she worked as an in home child care worker for two years in 2009 and 2010, when she cared for a 3-year-old child in addition to her own. Dr. Fulford also failed to comment on why such low intellectual functioning is not clearly reflected in the medical record . . . . I do not accept the IQ obtained by Dr. Figurelli because I find it inconsistent with the medical record and with the claimant's ability to work, care for herself, her own young child, and her work as a self-employed child care worker . . . . Tr. 17-18.

These findings constitute sufficient evidence for the ALJ to properly reject the IQ score. Therefore, the ALJ did not make a reversible error at step three by finding the Plaintiff not disabled.

### B. Step Five: Whether the ALJ correctly determined that Plaintiff could perform other work in the national economy

Plaintiff contends that the ALJ committed an error when she determined that Plaintiff's residual functional capacity is compatible with other work existing in the national economy. Plaintiff contends that the ALJ's step five determination is not supported by substantial evidence. The Court disagrees.

The ALJ determined that Plaintiff's mental limitations have little or no effect on the occupational base of unskilled work at all exertional levels. Tr. 19. Plaintiff contends that she cannot perform light work because she suffers from anxiety. Tr. 37. However, the VE found that work exists for a claimant matching Plaintiff's age, education, and residual functional capacity. Tr. 57. The VE identified a number of occupations such as document prep worker, table worker, and weigher, each of which could be performed by a person with Plaintiff's limitations. Tr. 58. The VE's determination constitutes substantial evidence sufficient to support the ALJ's finding that Plaintiff was able to perform work that existed in significant numbers in the national economy. *See Rutherford v. Barnhard*, 399 F.3d 546, 555 (3d Cir. 2005) (explaining that the ALJ is entitled to rely upon VE testimony as substantial evidence for step-five determination).

In light of the substantial evidence that Plaintiff could perform light work, the Court finds that the ALJ's RFC determination was not a reversible error.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: August 4, 2014